IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Willie Singleton, ) | C/A. No. 2:20-116-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| City of Georgetown, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Before the Court is Defendants' motion for summary judgment (Dkt. No. 18). For the reasons set forth below, the Court grants the motion.

**I.     Background[1]**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Defendants are the City of Georgetown (the "City"), Brendon M. Barber, Mayor of Georgetown, Clarence C. Smalls, City Council Member, Carol Jayroe, City Council Member, Sheldon A. Butts, City Council Member, Al Joseph, City Council Member, Rudolph A. Bradley[2], City Council Member, Tupelo Humes, City Council Member, Cary Smith, City Administrator, Ricky Martin, Building and Zoning Administrator for

---

[1] All facts are viewed in a light most favorable to Plaintiff, the non-moving party.

[2] Defendants note that Bradley died on November 28, 2020, but that, as of the filing of Defendants' motion—February 12, 2021—Plaintiff had not decided whether to proceed against Bradley's estate. (Dkt. No. 18-1 at 1). For completeness's sake, and as Plaintiff does not clarify in his response in opposition whether he is proceeding against Bradley's estate, *see* Fed. R. Civ. P. 25(a)(1) (noting that if a motion is not made within 90 days after service of a statement noting a party's death, "the action . . . against the decedent must be dismissed"), the Court will analyze Defendants' motion as if Plaintiff had elected to pursue its claims against Bradley's estate.

the City of Georgetown, and Janice Grant, an employee of the City of Georgetown (collectively "Defendants").

Plaintiff owns property in the City of Georgetown. (Dkt. No. 1-1 ¶ 22). In 2017, Plaintiff bought five modular school classrooms from the Johnsonville School District and moved them to lots he owned in the City. (*Id.* ¶¶ 30, 33). Prior to moving the units, Plaintiff and City Administrator Martin had conversations regarding requirements for modular buildings. (*Id.* ¶¶ 34-35); (Dkt. No. 18-3 at 18). Martin informed Plaintiff he had to provide a site plan from an engineer. Plaintiff acquired and presented a plan from an engineer to "join the two buildings as required by the City official." (Dkt. No. 1-1 ¶ 36). Plaintiff "placed two of the buildings on his lot located at Merriman Road." (*Id.* ¶ 38). Around April 5, 2018, however, Martin issued a stop work order for the property located on the corner of South Merriman and South Emmanuel Street (the "Merriman Lot"). (*Id.* ¶ 38); (Dkt. No. 18-11) (stop work order from Martin to Plaintiff noting that no permits had been issued and that Plaintiff had been informed, prior to placement, that a permit, site plan, and foundation work were required). On April 9, 2018, Plaintiff had a meeting with Joe McCray, Plaintiff's Project Manager, and Martin, during which Martin informed Plaintiff that the "property and project were in violation of law/code." (Dkt. No. 1-1 ¶ 42). Martin refused to provide what law or code the "project was in violation [of] and in fact informed the Plaintiff and McCray that they would go look it up themselves." (*Id.*) (errors in original).

On April 10, 2018, "the City provided the Plaintiff a copy of the State Law titled 23-43-10 et al." (*Id.* ¶ 44). The next day, Plaintiff "proved a copy of 23-43-85 stating that the building was constructed prior to January 1, 2005 and therefore not subject to the law." (*Id.*) (errors in original).

On April 16, 2018, Martin sent a letter to Plaintiff acknowledging receipt of the building permit and providing a list of items that were needed prior to issuing a permit. (Dkt. No. 18-12).

2

"The Letter violated the law as it required several things that were not required by the law." (Dkt. No. 1-1 ¶ 47).

Around April 19, 2018, Martin become aware that the modular buildings had been placed on a lot located at the corner of Winyah and Alex Alford (the "Winyah Lot") and issued a letter notifying Plaintiff that he needed to meet certain requirements. (Dkt. No. 18-13).

On May 11, 2018, the City of Georgetown issued a violation to Plaintiff for the Merriam Lot. (Dkt. No. 1-1 ¶¶ 51-52); (Dkt. No. 18-14) (copy of Uniform Ordinance Summons 000960 indicating a "Bond Amount" of $1,085.00 and noting Plaintiff had violated Chapter 5, Sec. 5-61 to 5-62). On June 7, 2018, the City of Georgetown issued a violation to Plaintiff for the Winyah Lot. (Dkt. No. 18-15) (copy of Uniform Ordinance Summons 000961 indicating a bond amount of $1085.00 and noting Plaintiff had violated Chapter 5, Sec. 5-61 to 5-62). Plaintiff, however, "had not violated either sections as set forth in the law." (Dkt. No. 1-1 ¶ 52). "The fines further violated the law as the code of ordinances sets forth that a City employee cannot issue a ticket for more than $500.00." (*Id.*).

On May 15, 2018, Janice Grant, "Code enforcement," "issued the Plaintiff a[] letter stating he was in violation and the property needed to be cleaned." (*Id.* ¶ 53). "The Plaintiff is one of the only people required to cut his lot. There are several other lots that are currently overgrown . . . but these individuals have not been issued a letter to cut the lots or be fined." (*Id.*).

On May 30, 2018, the City of Georgetown sent a letter to Plaintiff informing Plaintiff that it could not issue a permit until it had received "full engineering plans," a final plat, and an indication of the "use of this site." (Dkt. No. 24-2 at 71).

On July 13, 2018, Martin sent an email to the Building Code Commission of the South Carolina Department of Labor, Licensing and Regulation requesting guidance on the situation,

3

and, in response, he was instructed to treat the modular buildings as "site built buildings." (Dkt. No. 18-16). On August 17, 2018, Martin and Matthew Millwood forwarded to the Plaintiff a letter again setting out the requirements for the issuance of a building permit. (Dkt. No. 18-17). On August 24, 2018, the City issued a Notice of Denial of the building permit for the Winyah Lot, setting out the basis for the denial. (Dkt. No. 18-18). Included was a notification to Plaintiff that he had the right to appeal the building code official's decision and that he had the right to apply for a variance. Plaintiff never appealed the City's position and complied with its requests. (Dkt. No. 18-2 at 9). The parties reached an agreement about the Winyah Lot and the summons was dismissed; additionally, a permit was issued based upon Plaintiff's complying with the City's requirements. (*Id.* at 10). And while the summons for the Merriam Lot is still pending, Plaintiff testified that he was in the process of completing construction on both lots and that it was "just a matter now of me [] finishing the work, because the city administrator has told Mr. Martin that any application or permits that anyone else did not need, I also did not." (Dkt. No. 18-2 at 26-27) ("[R]ight now, its just a matter of me completing it, unless [Martin or the City Administrator] brings something else up based on that meeting we had two or three weeks ago.").

Plaintiff brings five causes of action: (1) Violation of the Eighth Amendment; (2) Violation of the equal protection clause of the Fourteenth Amendment; (3) Violation of the Fourth Amendment; (4) Violation of the Fifth Amendment; and (5) Violation of the First Amendment.

Defendants moved for summary judgment. (Dkt. No. 18). Plaintiff opposes. (Dkt. No. 24).[3]

---

[3] Attached to Plaintiff's response in opposition is the "Affidavit of Willie Singleton." Though notarized, Plaintiff's statement is unsworn. Because "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment," *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir. 1993), the Court will not—indeed cannot—consider Plaintiff's "affidavit" in ruling on Defendants' motion, *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793,

4

Defendants' motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold*, *Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**III.    Discussion**

  **a.     *Respondeat Superior*—Defendants Barber, Smalls, Jayroe, Butts, Joseph, Humes, Smith, and Grant**

Defendants argue that Barber[4]—as to Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment claims—and Smalls, Jayroe, Butts, Joseph, Humes, Smith, and Grant—as to all of

---

798 (D. Md. 2001) ("[U]nsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment.") (internal quotation marks omitted). *See Network Comput. Servs. Corp. v. Cisco Sys., Inc.*, 152 Fed. Appx. 317, 321 (4th Cir. 2005) ("[A] notary's certificate simply means that the [doctor's] signature is authentic. It is not a substitute for language indicating that the witness understood he risked prosecution for perjury if he gave false testimony."); *Moore v. Laurens Cty.*, No. 6:09-CV-03083-JMC, 2011 WL 4345883, at *3 (D.S.C. Sept. 16, 2011) (declining to consider an unsworn notarized statement and holding that "an unsworn affidavit, not accompanied by a statement affirming its authenticity, is not admissible to create an issue of fact").

[4] Defendants present separate arguments for why Barber is entitled to summary judgment on Plaintiff's First Amendment claim. *See* (Dkt. No. 18-1 at 12-13).

Plaintiff's claims—are entitled to summary judgment because claims under § 1983 may not be premised on *respondeat superior*. Defendants note that Plaintiff testified he sued Mayor Barber based upon the fact that, despite Barber being aware of Martin's actions, Barber failed to prevent them from occurring. (Dkt. No. 18-2 at 14-16). Likewise, Defendants note that Plaintiff testified he sued Smalls, Jayroe, Butts, Joseph, and Humes—all city council members—based upon their inaction when learning of Plaintiff's complaints against Martin. (Dkt. No. 18-2 at 16-20). Defendants then point out that while Plaintiff testified he sued Smith,[5] the former City Administrator, on the basis that Smith failed to properly monitor Martin and check on his actions, (*id.* at 20), Plaintiff has put forward no evidence that Smith's actions or inactions rose to the level of deliberate indifference or that there was a causal link between Smith's inaction and the Plaintiff's alleged constitutional injury. Last, Defendants note that, as to Grant, her only involvement in this case was a March 28, 2018 letter to Plaintiff informing Plaintiff that he needed to clear his lot. (*Id.* at 21). *See also* (Dkt. No. 18-5 at 5-6) (testimony of Grant asserting she was not involved with building permits). In opposition, Plaintiff states only that "[e]ach of the individuals acted in this case. Mr. Singleton consulted with and sought assistance from each of the individuals listed that were on the City Counsel." (Dkt. No. 24 at 20). As it regards Smith, Plaintiff argues that he "sent several letters and had meetings with Smith in order to attempt to handle this matter properly. Smith refused." (*Id.* at 21).

A claim under 42 U.S.C. § 1983 cannot be based upon *respondeat superior*; however, a supervisory official can be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The three

---

[5] Defendants note that the City of Georgetown has a "strong Mayor and we[ak] council form of government, and the Mayor operates through the City Administrator." (Dkt. No. 18-1 at 8) (citing (Dkt. No. 18-4 at 2).

elements necessary to establish supervisory liability under §1983 are: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799.

The Court finds Defendant Barber is entitled to summary judgment on Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment claims and that Smalls, Jayroe, Butts, Joseph, Humes, Smith, and Grant are entitled to summary judgment on all of Plaintiff's claims. As it concerns all the above Defendants except City Administrator Smith, Plaintiff in effect concedes that said individuals had no role in the issuing of the summonses which Plaintiff complains of in his complaint. *See* (Dkt. No. 24 at 20-21). Thus, no reasonable juror could find that, generally speaking, Barber, Smalls, Jayroe, Butts, Joseph, Humes, or Grant was personally engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff. *See Landrum v. Spartanburg Cty.*, No. 7:10-CV-00007-JMC, 2011 WL 3652291, at *4 (D.S.C. Aug. 18, 2011) ("It is well settled that 'in order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'") (citing *Davis v. DSS*, 941 F.2d 1206 (4th Cir. 1991)); *see also Davis Wright v. Ozmint*, No. CA 2:07-2515-JFA-RSC, 2008 WL 4542915, at *4 (D.S.C. Oct. 7, 2008) (noting a "defendant cannot be held liable for the acts of others without specific wrongdoing by that defendant"). As to Smith, Plaintiff has put forth no record evidence rebutting Defendants' arguments and showing Smith's actions or inactions rose to the level of deliberate indifference or

7

were casually connected to Martin's actions. *See Collier v. Mueller*, No. CA 2:12-01523-TMC, 2013 WL 4495990, at *2 (D.S.C. Aug. 20, 2013) (granting summary judgement where "Plaintiff does not allege any personal action or inaction by Defendant Mueller; his allegations against Mueller are simply that Mueller is 'in charge of' the Detention Center."); *Id.* (further noting that "[a] plaintiff in a supervisory liability case 'assumes a heavy burden of proof,' as the plaintiff 'not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices.' Generally speaking, a plaintiff cannot satisfy this heavy burden of proof 'by pointing to a single incident or isolated incidents,' but '[a] supervisor's continued inaction in the face of documented widespread abuses ... provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.'"); *Coleman v. Stevenson*, No. 0:09-cv-872-HMH, 2010 WL 2990737, at *4 (D.S.C. June 22, 2010) ("Mere knowledge is not sufficient to establish personal participation."), *adopted by*, 2010 WL 2990740 (D.S.C. July 26, 2010), *aff'd*, 407 F. App'x 709 (4th Cir. 2011).

Defendants' motion is therefore granted with respect to all claims against Defendants Smalls, Jayroe, Butts, Joseph, Humes, Smith, and Grant. The Court also grants Barber summary judgment on Plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment claims.

### b.    **Eighth Amendment**

Plaintiff's first cause of action alleges that Defendants Martin and the City of Georgetown violated the Eighth Amendment's prohibition on excessive fines. Specifically, Plaintiff alleges that the tickets issued to him by the City on May 11, 2018 and June 7, 2018 each "carried a fine of

$2,170.00" even though "a City employee cannot issue a ticket for more than $500." (Dkt. No. 1-1 ¶ 52).

Martin and the City of Georgetown argue they are entitled to summary judgment on this claim. Martin and the City note that each summons in question references a "bond" in the amount of $1,805.00 *See* (Dkt. Nos. 18-14 and 18-15). Martin and the City further note that, per Martin's testimony, the amount of the bond consists of various items of which only $500.00 is a fine—the remainder being comprised of a state assessment, a victim service assessment, a victim conviction surcharge, and a law enforcement surcharge. (Dkt. No. 18-3 at 26-27). In his briefing, Plaintiff does not dispute this testimony.

The Eighth Amendment provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. *U.S. v. Bajakajian*, 524 U.S. 321, 328 (1998). The excessive fine clause of the Eighth Amendment is violated only if the disputed fees are both fines and excessive. *Id.*

Here, the undisputed evidence before the Court shows that Plaintiff was not assessed a fine in excess of $500.00. Instead, Plaintiff was assessed two separate fines, each for $500.00, and each part of a larger figure including other charges. Plaintiff does not substantively dispute this. *See* (Dkt. No. 24 at 25-26). Accordingly, the Court grants Martin and the City of Georgetown summary judgment on Plaintiff's Eighth Amendment claim.

    c.    **Fourteenth Amendment**

In his second cause of action, Plaintiff alleges that Martin and the City of Georgetown discriminated against him through the selective enforcement of ordinances and zoning laws, in violation of the equal protection clause of the Fourteenth Amendment.

Martin and the City argue they are entitled to summary judgment on this claim. Defendants note Martin testified that he was aware of one or two similar situations where a property owner brought in a modular building which had previously been used a classroom and that Plaintiff had been treated the same as these individuals. *See* (Dkt. No. 18-3 at 30-31) ("Q: And did you have the same requirements for that modular building as you did for Mr. Singleton? A: Yes, sir; I did. Q. And, for example, did you require that they provide engineered drawings for the foundations? A: Yes, sir. Q: And did that individual provide those? A: Yes, sir; he did. Q: And do you know the race of that person? A: He is white. Q: Okay. But you treated Mr. Singleton the same way as you treated this individual; correct? A: Yes, sir; I did."). Defendants also note that both Dr. Sandra Yudice, a City Administrator, and Angela Rambeau, the Community Development Director, investigated Plaintiff's complaints and found they were unfounded. (Dkt. No. 18-7 at 4-6); (Dkt. No. 18-8 at 4-5). In opposition Plaintiff states, "As presented by the Plaintiff, Mr. Singleton several other offices were permitted to bring in modulars and were not subjected to the same treatment. Martin testified in his deposition that there were others in the city but failed to produce those records to show similar treatment." (Dkt. No. 24 at 23) (errors in original).

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. 14 § 1. Its central mandate is racial neutrality in governmental decision making. *See Loving v. Virginia*, 388 U.S. 1, 11 (1967). For a viable equal protection claim, the plaintiff must establish "that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *See Cent. Radio Co. Inc. v. City of Norfolk*, 811 F.3d 625, 634–35 (4th Cir. 2016). Although a plaintiff need not show that discrimination was the defendant's "sole motive," he "must allege the requisite discriminatory intent with more than mere conclusory assertions." *Williams v.*

*Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (emphasis in original). To state a valid equal protection claim, the plaintiffs must set forth specific factual allegations that are probative of an improper motive. *Id.*

The Court grants Martin and the City of Georgetown summary judgment on Plaintiff's equal protection claim. Simply put, Plaintiff has not put forth evidence to rebut Martin's testimony that other similarly situated individuals were treated identically as Plaintiff. Defendants are thus appropriately granted summary judgment on Plaintiff's Fourteenth Amendment claim.

    **c.**    **Fourth Amendment**

In his third cause of action, Plaintiff argues that the Martin and the City of Georgetown's "conduct prevents the use of the property" and is therefore an illegal seizure under the Fourth Amendment.

The Fourth Amendment protects individuals from unreasonable searches and seizures of their persons, houses, papers and effects. *Soldal v. Cook County,* 506 U.S. 56, 62 (1992). The seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Altman v. City of High Point,* 330 F.3d 194, 204 (4th Cir.2003) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). With real property, an individual need not be completely deprived of his possessory interests for the deprivation to constitute a seizure. *Presley v. City of Charlottesville,* 464 F.3d 480, 487 (4th Cir. 2006).

Martin and the City of Georgetown argue that they are entitled to summary judgment on this claim. Martin and the City argue that the Fourth Amendment "does not extend to Plaintiff's use of a vacant lot" and that, "[f]urthermore . . . enforcement of the building code and zoning requirements can[not] constitute an unreasonable seizure of property." (Dkt. No. 18-1 at 11).

Plaintiff, for his part, argues summary judgment is inappropriate because "Defendants interfered with [Plaintiff's] rights to his property and placing buildings on that property." (Dkt. No. 24 at 24).

In *Marcavage v. Borough of Lansdowne, Pa.,* 826 F. Supp. 2d 732 (E.D. Pa. 2011), the plaintiff alleged that a notice posted on his property declaring it an "unlawful rental property" for plaintiff's failure to comply with an ordinance requiring him to obtain a rental license amounted to a seizure of his property under the Fourth Amendment. *Marcavage,* 826 F. Supp. 2d at 745. As a result of the notice, Plaintiff voluntarily left his property. *Id.* at 738. The court found that the notice did not amount to a seizure of Plaintiff's property. *Id.* at 747. The notice did not state that the plaintiff would be removed from the property, it did not order him to vacate the premises, nor did it reference any judicial order of eviction. *Id.* The notice simply informed the plaintiff and others that use of the property as rental property was unlawful under the relevant ordinance. *Id; see also Nikolas v. City of Omaha,* 605 F.3d 539, 544–47 (8th Cir. 2010) (placarding of landowner's garage as unfit for human occupancy, after city code inspector saw that garage was going to be used in violation of city's zoning ordinance, is not a seizure under Fourth Amendment); *United States v. TWP 17 R 4,* 970 F.2d 984, 989 (1st Cir. 1992) (posting warrant of arrest *in rem* on parcel of real estate did not constitute seizure of real estate); *see also Thomas v. Cohen*, 304 F.3d 563, 572 (6th Cir.2002) ("Escorting tenants from their residences in the course of effectuating an eviction ... satisfies the requirement of 'meaningful interference' with their leasehold interest so as to amount to a seizure of their property.").

The Court grants Martin and the City summary judgment on Plaintiff's Fourth Amendment claim.  Here, Martin's conduct simply put Plaintiff on notice that the modular structures on his property were not in conformity with the City's code.  Plaintiff, for his part, fails to present sufficient evidence to show how this notice amounts to a meaningful interference with his

12

possessory interest in his property as contemplated by the Fourth Amendment. *See Johnson v. Cty. of Horry, S.C.*, No. 4:09-CV-1758-JMC-TER, 2012 WL 3260426, at *9 (D.S.C. July 19, 2012) (citing *Marcavage* and finding that no seizure of property occurred where plaintiff was informed that a particular ordinance prohibited him from placing certain structures on his property and where no evidence existed that Plaintiff was threatened with criminal prosecution if such a structure was erected), *report and recommendation adopted*, No. 4:09-CV-01758-JMC, 2012 WL 3260417 (D.S.C. Aug. 8, 2012), *aff'd,* 509 F. App'x 256 (4th Cir. 2013). Therefore, as Plaintiff fails to create an issue of material fact as to whether a seizure took place, summary judgment is appropriate on Plaintiff's third cause of action.

### d.    Fifth Amendment

In his fourth cause of action, Plaintiff argues that Martin and the City of Georgetown effectuated a taking under the Fifth Amendment for which Plaintiff is entitled compensation. *See* (Dkt. No. 1-1 ¶ 48) ("That the City declaring the property as non-buildable is a[n] unconstitutional taking of the Plaintiff's property in violation of the law.").

The takings clause of the Fifth Amendment provides "nor shall private property be taken for public use without just compensation." *Dune West Golf Club, LLC v. Town of Mt. Pleasant*, 737 S.E. 2d 601, 618, 401 SC 280 (2013). Government regulation effectuates a per se taking in two scenarios: (1) when an owner is required to suffer a permanent physical invasion of property, however minor; or (2) where a regulation denies an economically beneficial or productive use of land. *Id.* at 619 (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015-16 (1992)).

The Court grants Martin and the City of Georgetown summary judgment on Plaintiff's taking claim. As Defendants note in their briefing, Plaintiff has not put forth evidence showing that a permanent physical invasion of property by the City occurred nor that the City issued a

regulation that completely denied an economically beneficial or productive use of Plaintiff's land. *See, e.g.*, (Dkt. No. 18-2 at 10) (Plaintiff testifying that he obtained a building permit for the Winyah lot because he "compl[ied] with some of the[] things" the City had requested of him).

Accordingly, Plaintiff fails to create an issue of material fact as to whether a taking occurred, and the Court grants Martin and the City summary judgment on this claim.

### e.  First Amendment

In his fifth cause of action, Plaintiff alleges that Martin, Barber, Bradley, and the City of Georgetown violated Plaintiff's First Amendment rights. Plaintiff alleges that he "exercised his rights to free speech when protesting the actions of the City through ordinances, failure to issue permits, etc. The City has retaliated against the Plaintiff for the exercise of those rights in violation of the law." (Dkt. No. 1-1 ¶ 109). Though unclear, it appears this "retaliation" took the form of the summonses Plaintiff was issued on the Merriam and Winyah Lots, *see* (*Id.* ¶ 115) ("The Adverse [sic] action was taken against the Plaintiff by the Defendants as a direct result of his expression of protecting the actions of the city against the poor and homeless in the City."), and the City's refusal to issue Plaintiff permits, *see* (*Id.* ¶ 62) ("The Defendant has informed the Plaintiff that he will not receive permits for the buildings because of his threat of litigation."). *But see* (Dkt. No. 18-2) (Plaintiff testifying that a permit had been issued for Winyah Lot). During his deposition, Plaintiff also testified that his First Amendment claim concerned Plaintiff's "speaking out at city council meetings." *See* (Dkt. No. 18-2 at 16, 25) (noting Mayor Barber told Plaintiff he could not criticize, by name, City employees during City Council meetings).

The First Amendment of the United States Constitution protects the freedom of speech by providing that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "The First Amendment right to free speech includes not only the affirmative right to

14

speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (citing *ACLU v. Wicomico Cty.*, Md., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.")); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech")). "However, not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *McGraw*, 202 F.3d at 685 (citation omitted). "Rather, a § 1983 retaliation plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights." *Id*. (citation omitted). "First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* at 685-86 (internal citations omitted).

A limited public forum is "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009). "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving [its forum] for certain groups or for the discussion of certain topics." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (internal quotation marks omitted); *see also City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n*, 429 U.S. 167, 176 n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter."). As stated by the Fourth Circuit, a government entity "is justified in limiting its meeting to discussion of specified agenda

items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business." *Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008). However, the power to restrict speech in a limited public forum "is not without limits." *Good News Club*, 533 U.S. at 106. In particular, "[t]he restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum." *Id.* at 106-07 (internal citations and quotation marks omitted); *see also Pleasant Grove City*, 555 U.S. at 470 ("In such a [limited public] forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral.").

Defendants argue that Martin, Barber, Bradley, and the City of Georgetown are entitled to summary judgment on Plaintiff's First Amendment claim. Defendants note that Plaintiff testified that his First Amendment claim concerned his "speaking out at city council meetings." (Dkt. No. 18-2 at 88). Plaintiff testified that although he had "always been allowed to speak" at such meetings, "[o]ne time [Mayor Barber and Bradley] . . . told [Plaintiff he] couldn't mention names." *See* (*id.* at 25-26); Deposition of Mayor Barber, (Dkt. No. 18-4 at 8-9) ("A point of order was called by our attorney . . . and she reminded me and Council and Mr. Singleton that any complaints shouldn't be directed at—towards any individual. You can speak to Council as a whole or refer to the department. . . . [I]t was just standard practice for our public hearing when residents come, that we—we issue that as respect and, also, not single out individuals, so that we can, at the end of the meeting, refer the residents to the department so they can speak in—in confidence to—to whatever individual that they have complaints about."). As Defendants note, however "no evidence [exists] that the Plaintiff in any way curtailed his speech as he continued to speak at City Council meetings" or that, broadly speaking, "a causal connection [otherwise exists] between his

16

complaints about the zoning in the west end and the actions related to permitting for the modular buildings." (Dkt. No. 18-1 at 10). *See* (Dkt. No. 1-1 ¶¶ 112, 115) (alleging Plaintiff "protested the City's use of ordinances to regulate the use of property in the west end" and that "Adverse action was taken against the Plaintiff . . . as a result of his expression of protesting the actions of the City against the poor and homeless"). Defendants further note that the City Council's rule regarding not using names was content neutral and reasonable considering the City Council's functions. In response to Defendants' argument, Plaintiff, citing no record evidence, argues that a question of material fact exists for the jury as to causation.[6] (Dkt. No. 24 at 23).

The Court grants Martin, Barber, Bradley, and the City summary judgment on Plaintiff's First Amendment claim. Here, as Defendants have shown, Plaintiff has not established a causal connection between his speaking at City Council meetings and the actions taken against his properties. And, contrary to Plaintiff's argument otherwise, the mere fact Plaintiff engaged in prior litigation with the City does not in and of itself create a causal relationship between Plaintiff's speaking at city council meetings and Martin's actions toward the Merriam and Winyah Lots. *See Hendrick v. Bishop*, No. TDC-14-2544, 2016 U.S. Dist. LEXIS 33607, at *25-26 (D. Md. Mar. 14, 2016) (finding the plaintiff established a dispute of material fact where he put forth specific evidence of a "retaliatory motiv[e]" on defendants' part noting "[n]ot only does Sgt. Forney's statement provide direct evidence of a retaliatory motivation for the transfer, but a reasonable jury could find causation based on the fact that his single cell status was removed immediately after

---

[6] Plaintiff argues, "Mr. Singleton protested the policies and procedures of the City and suffered the consequences of those actions over the last 6 years. . . . The Defendants contend that there is no connection between Singleton's complaints regarding zoning in the west end and the modular buildings. There is a genuine issue of material fact as to the actions of the Defendant regarding the Plaintiff's actions. . . . Specifically, one must consider that Mr. Singleton has been involved in several complaints against the City and Martin." (Dkt. No. 24 at 23).

Hendrick rejected the offer by Beeman and Lt. Sawyers to allow Hendrick to stay in a single cell if he dropped his excessive force grievance"); *Conley v. Town of Elkton*, 190 F. App'x 246, 253 n.4 (4th Cir. 2006) (unpublished) (noting, in the context of a First Amendment retaliation claim by a police officer that he was terminated in retaliation for protected speech, that events occurring one year and two years prior to his termination "are simply too far removed from his termination to raise a genuine issue of material fact concerning causation"). Further, as Defendants demonstrate in their briefing, and as Plaintiff does not substantively dispute, the City Council's rule regarding the use of names was content neutral and reasonable. *See Rowe v. City of Cocoa*, 358 F.3d 800, 802-03 (11th Cir.2004) (noting city council meetings are considered limited public fora, access to which may be restricted, without violating the First Amendment, by content-neutral conditions regarding the time, place, and manner of speech); *Hickory Fire Fighters Ass' n v. City of Hickory*, 656 F.2d 917, 923 (4th Cir. 1981) (noting content neutral restrictions are permissible if they are "drawn with narrow specificity and are no more restrictive than necessary").[7]

In sum, no question of material fact exists as to Plaintiff's First Amendment claim, and the Court finds that Martin, Bradley, and the City are entitled to summary judgment as a matter of law.

---

[7] Because the Court finds that Defendants are entitled to summary judgment on the entirety of Plaintiff's claims, the Court need not consider Defendants' arguments regarding whether *Burford* or *Younger* abstention applies, whether Martin is entitled to qualified immunity for the actions alleged in Plaintiff's complaint, or whether the *Monell* doctrine shields the City. *See Singleton v. City of Georgetown*, No. 2:15-02579-DCN, 2017 WL 570007, at *8 (D.S.C. Feb. 13, 2017) (dismissing plaintiff's federal claims on the merits and declining to analyze defendant's various "affirmative defenses," including certain abstention doctrines). *See also MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) ("The Town first argues that summary judgment was appropriate regardless of the resolution of Leith's vested rights claim. Because an error of law amounts to an abuse of discretion, we agree with the Town that, if summary judgment was appropriate on Leith's substantive due process claim, *Burford* abstention would not be.") (internal citation omitted).

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment (Dkt. No. 18).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
United States District Judge

May 12, 2021
Charleston, South Carolina